UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID CANTERO GONGORA**<br>1136 Larrabee St.<br>West Hollywood, CA 90069<br><br>    Plaintiff,<br><br>    v.<br><br>**U.S. CITIZENSHIP AND IMMIGRATION SERVICES**, 20 Massachusetts Ave, NW, Washington, DC 20529<br><br>**LOREN K. MILLER, DIRECTOR, NEBRASKA SERVICE CENTER**, 20 Massachusetts Ave, NW, Washington, DC 20529<br><br>    Defendants. | Civil No.: 1:19-cv-3285 |

## COMPLAINT

Plaintiff alleges as follows:

### JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and causes of action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

### VENUE

2. Venue in this district is proper under 28 U.S.C. § 1391(e)(1).

### PARTIES

3. Plaintiff, David Cantero Gongora, also known as Edgar Cantero, is a citizen of Spain residing in Los Angeles and is an author engaging in his profession in the United

States pursuant to an O-1 visa for aliens of extraordinary achievement filed on his behalf by renowned publisher Penguin Random House.

4.  Defendant United States Citizenship and Immigration Services ("USCIS") is the agency within the Department of Homeland Security which is responsible for adjudicating immigrant visa petitions.

5.  Defendant Loren K. Miller is sued in his official capacity as Director of the Nebraska Service Center (NSC) of the USCIS.  As Director of the NSC, Mr. Miller is responsible for overseeing the administration of immigration benefits, including the immigrant petition process.

## STATUTORY BACKGROUND

6.  The Immigration and Nationality Act ("INA") provides for immigration status for aliens of extraordinary ability who have demonstrated sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation.  The alien must seek to continue work in the area of extraordinary ability, and substantially benefit prospectively the United States.  INA § 203(b)(1)(A); 8 U.S.C. § 1153(b)(1)(A).

7.  The INA also provides that the alien, or a person on behalf of the alien, may petition for classification as an alien of extraordinary ability.  INA § 204(a)(1)(E); 8 U.S.C. § 1154(a)(1)(E).

8.  The agency, USCIS, promulgated regulations at 8 C.F.R. § 204.5(h) which describe the meaning of extraordinary ability, and set out the types of documentation that can be submitted in order to establish eligibility.

9.  The regulations require evidence of a one-time achievement such as a major, internationally recognized award, or 3 of a list of 10 criteria.  8 C.F.R. § 204.5(h)(3)(i)-(x) listing the 10 areas of documentation.

10. Once the evidentiary burden has been met by establishing a one-time achievement, or in the alternative 3 of the 10 criteria, the regulations require a determination

whether the evidence demonstrates both a "level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the[ir] field of endeavor," 8 C.F.R. § 204.5(h)(2), and "that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). See *Kazarian v. USCIS*, 596 F.3d 1115, 1119-20 (9th Cir. 2010); *Rijal v. USCIS*, 772 F.Supp.2d 1339 (W.D. Wash 2011)

11. USCIS utilizes a preponderance of the evidence standard in adjudicating evidence submitted in support of immigrant petitions.

## FACTS

12. On June 11, 2019, Plaintiff filed an immigrant petition on Form I-140 with Defendant USCIS at the Nebraska Service Center (NSC). The petition was assigned receipt number LIN1919550310.

13. The I-140 petition was filed with a request for premium processing and accompanied by $2,110 in filing fees. The Receipt Notice acknowledged receipt of the fees.

14. The I-140 petition was filed as a self-petition and requested classification of Plaintiff as an alien of extraordinary ability under INA Section § 203(b)(1)(A), 8 U.S.C. § 1153(b)(1)(A).

15. The I-140 petition was accompanied by evidence claiming eligibility under 5 of the 10 criteria, two more than is required by the regulation.

16. On June 20, 2019, Defendant USCIS issued Plaintiff a Request for Evidence (RFE) requiring the submission of additional evidence under signature of Defendant Loren K. Miller, Director of the NSC.

17. The RFE requested additional evidence of the Plaintiff's intent to continue work in his area of expertise and of the Plaintiff's record of sustained national or international acclaim, stating that none of the criteria had been met.

18. On September 6, 2019, Plaintiff filed a response to the RFE.

19. Plaintiff's RFE response claimed eligibility under 5 of the 10 criteria,

although only three were required for approval, and provided over 300 pages of evidence, including an 11-page letter from counsel that provided additional details on the submitted evidence and Plaintiff's record of sustained national or international acclaim.

20. On September 18, 2019, Defendant USCIS issued a denial under signature of Defendant Miller. The denial stated that Plaintiff had failed to prove by a preponderance of the evidence that any three of the ten criteria applied, that Plaintiff did not establish a record of sustained national or international acclaim, and that the record lacked detailed evidence of Plaintiff's intent to continue work in his area of expertise in the United States.

21. The I-140 petition and RFE response included documentation of the Plaintiff's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor to satisfy the criteria at 8 C.F.R. § 204.5(h)(3)(i).

22. While acknowledging some of the submitted evidence, the denial stated, "[T]here is no supporting documentation from the awarding entities or the print media to establish that the awards submitted by you are nationally or internationally recognized awards for excellence in the field. Specifically, you failed to submit the evidence demonstrating; the criteria used to give the prizes or awards, national and international media coverage of prizes or awards, the reputation of the organization granting the prizes or awards, who are considered for the prizes or awards including the geographic scope from which candidates may apply, how many prizes or awards are awarded each year, previous winner [sic] who enjoyed national or international acclaim, and how prizes or awards are given for excellence in you field. Thus, you have not established that you meet this criterion."

23. Contrary to the assertion in Paragraph 22, Plaintiff submitted substantial documentation of the national and international recognition of the awards and prizes he has received, including lists of previous award winners, histories of the awarded prizes, histories and information about the awarding entities, rules for submission to award competitions, information regarding award endowments, information regarding who is eligible for award consideration and how a winner is selected, photos of awards and trophies, and media coverage of Plaintiff's

4

receipt of awards. The submitted evidence was published by various media sources and the awarding entities.

24. Defendants did not recount this evidence described in Paragraph 23 in the decision denying the petition.

25. Defendants did not consider the evidence described in Paragraph 23 in acting to deny the petition.

26. Plaintiff's I-140 petition and RFE response included published material about the Plaintiff in professional or major trade publications or other major media, relating to the alien's work as an Author, to satisfy the criteria at 8 C.F.R. § 204.5(h)(3)(iii).

27. The denial states, "In order for published material to meet this criterion, it must primarily be about you relating to your work in the field and, as stated in the regulations, be printed in professional or major trade publications or other major media. To qualify as major media, the publication should have significant national or international distribution. … Since the evidence does not show that published material about you in professional or major trade publications or other major media, you have not established for meeting this criterion."

28. Contrary to the assertion in Paragraph 27, Plaintiff submitted evidence of the distribution information for each media source and the sources' standings as major trade or other major media publications, including but not limited to multiple reviews of Plaintiff's work published by major media and trade publications such as National Public Radio ("NPR" 40 million monthly website visitors) and Publisher's Weekly (14 million unique annual website visitors).

29. Defendants did not recount the evidence described in Paragraph 28 in the RFE, or in the decision.

30. Defendants did not consider the evidence described in Paragraph 28.

31. In considering evidence submitted to satisfy the criteria at 8 C.F.R. § 204.5(h)(3)(iii) the denial states, "In response to the RFE, you have provided the evidence of: your book, "Meddling Kids", selling advertisement from USATODAY.com; and duplicate

5

copies of evidence initially submitted. In this case, you have provided your published book, "Meddling Kids", and other books' advertisements on usatoday.com, but there are not publications about you rather than books advertisement online. … Simply submitting books' advertisement cannot meet this criterion. Articles that are not about you do not meet this regulatory criterion."

32. The published material in USATODAY.com which the denial refers to is a book review by a book critic, not an advertisement. The review of Plaintiff's novel published by USA TODAY, titled *"Scooby-Doo fans will dig Cantero's 'Meddling Kids,'"* was submitted as evidence in the I-140 petition and RFE response to satisfy the criteria at 8 C.F.R. § 204.5(h)(3)(iii). The book review in USA TODAY was by Brian Truitt, an entertainment writer with two decades of reporting experience. The review and USA TODAY's standing as a major media organization, with nearly three million daily readers, was discussed at length in counsel's letter submitted with the RFE response.

33. Plaintiff did not submit advertising of his books for consideration as evidence in the I-140 petition or RFE response.

34. Defendants failed to consider the evidence, and misconstrued and misinterpreted the evidence described in Paragraph 32.

35. In discussing published material about Plaintiff in professional or major trade publications or other major media, the denial states, "In order to meet this criterion, you must be the focus of published material as related to your work in the field. The published material must not simply be about your work, but about you although it may not be unrelated to your work."

36. Plaintiff submitted multiple other publications in foreign languages, with certified translations, and Defendants entirely ignored these publications.

37. The I-140 petition and RFE response included evidence that Plaintiff has performed in a leading or critical role for organizations or establishments that have a distinguished reputation to document the criteria at 8 C.F.R. § 204.5(h)(3)(viii).

38.	Plaintiff submitted a letter of support from Robert Bloom, the Plaintiff's editor at Doubleday, a subsidiary of the publisher Penguin Random House.

39.	The denial states, "[T]he letter does not contain detailed and probative information that specifically addresses how your role for any organization or establishment was leading or critical. The letter shows that he edited your published book and you are currently focusing on a fourth novel with Doubleday Publish [sic] company. … In your field, to satisfy this criterion, you must have performed in a leading or critical role for distinguished publishing companies or production companies, demonstrating that your roles as author have been leading/critical to their operation, beyond what other leading author [sic] can claim."

40.	Mr. Bloom states in his letter that Plaintiff's role is critical to the organization because Plaintiff's works are among the few that result in positive income to the organization. Mr. Bloom's letter states that "it is generally estimated that in our industry, less than 30% of all book contracts 'earn out'—meaning a book's sales are sufficient to earn additional royalties beyond the amount advanced to them per the contract. There are only 15 slots on the *New York Times* Bestseller list and easily 50,000-60,000 novels published in a given year by traditional publishing (the number of titles that are self-published and from non-traditional publishers is estimated at three times that number) so the chances of becoming a bestseller, as David has done, is incredibly small. That David Cantero Gongora is both a New York Times bestselling [author] and writes profitable books is a rare feat that makes his role as a Doubleday author critical for our business."

41.	Plaintiff submitted signed and dated contracts to corroborate Mr. Bloom's statements. Plaintiff also submitted evidence of the listing of Plaintiff's work on the *New York Times* Bestseller list.

42.	Plaintiff submitted detailed and probative information that specifically addresses his critical role at Doubleday, a Penguin Random House subsidiary.

43.	Plaintiff has served a critical role for Doubleday, a subsidiary of Penguin Random House.

44.     The denial also states that "the evidence does not indicate that the organizations or establishments for which you have claimed to perform in leading or critical roles have a distinguished reputation."

45.     Plaintiff provided detailed documentation in the I-140 petition and RFE response from Penguin Random House subsidiary Doubleday documenting the distinguished reputation of the organization, including lists of award-winning fiction, best-selling classics, and information about Penguin Random House, its history, and information about its imprints. According to the evidence provided from the Penguin Random House website, Penguin Random House has published more than 70 Nobel Prize laureates and hundreds of the world's top-selling and acclaimed authors, including Jodi Picoult, Chinua Achebe, Marlon James, Elizabeth Strout, Chimamanda Ngozi Adichie, Alice Munro, Karl Ove Knausgaard, Joan Didion, Toni Morrison, Oliver Sacks, Mary Oliver, and many more.

46.     Doubleday, a subsidiary of Penguin Random House is a distinguished organization.

47.     Plaintiff's I-140 petition and RFE response included evidence that Plaintiff has commanded a high salary or other significantly high remuneration for services, in relation to others in the field to document the criteria at 8 C.F.R. § 204.5(h)(3)(ix).

48.     The evidence regarding Plaintiff's salary showed $222,940.39 in remuneration in 2018 as documented by Plaintiff's IRS Form 1099-MISC. Plaintiff also provided private salary surveys from GlassDoor, ZipRecruiter, and PayScale demonstrating average writer salaries in the U.S. of between $50,000 to $60,000 per year, with the highest wage in the field as $113,000. This evidence establishes that Plaintiff's remuneration was high in relation to others in his field.

49.     Defendants stated in the RFE that Plaintiff "should provide the evidence of 'best paying author in the US' from the Forbes magazine showing that your compensation was significantly high in relation to others in the field."

50.     Plaintiff provided the Forbes 2018 list in the RFE response. The Forbes

list shows James Patterson earned $86 million at the number 1 spot, while Rick Riordan and E.L. James tied for the number 10 spot with $10.5 million in earnings.

51. Plaintiff's counsel noted in the letter submitted with the RFE response that the regulatory criterion at 8 C.F.R. § 204.5(h)(3)(ix) requires "[e]vidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field," but that the regulations do not require, as evidence of extraordinary ability, that the beneficiary show they are on the Forbes list of the top 10 highest paid authors in the world, as Defendants claimed.

52. By its plain language, the regulations at 8 C.F.R. § 204.5(h)(3)(ix) do not require that Plaintiff be paid the highest of all others in the world in which classification is sought. The regulation requires that the remuneration be high in relation to others in the field.

53. The denial failed to discuss or even mention the evidence provided to satisfy the criteria at 8 C.F.R. § 204.5(h)(3)(ix).

54. Defendants failed to consider the evidence provided to satisfy the criteria at 8 C.F.R. § 204.5(h)(3)(ix).

55. The I-140 petition and RFE response included evidence of Plaintiff's commercial success to document the criteria at 8 C.F.R. § 204.5(h)(3)(x). Because Plaintiff is not in the field of performing arts and the standards found at 8 C.F.R. § 204.5(h)(3)(x) do not readily apply to the field in which Plaintiff seeks classification, Plaintiff requested consideration of commercial success under the comparable evidence prong of the regulations found at 8 C.F.R. § 204.5(h)(4).

56. The denial states, "In response to the RFE, you have provided the contract agreement dated August 29, 2016 from The Knopf Doubleday Publishing Group. This regulatory criterion calls for evidence of commercial successes in the forms of 'sales' or 'receipts'; simply submitting your work contracts cannot meet the plain language of this regulatory criterion. Based on your failure to provide evidence of sales or box office receipts, you did not submit qualifying evidence that meets the plain language requirements of this criterion, and you failed to establish

that you meet the plain language of this criterion."

57. In addition to signed and dated contracts, Plaintiff submitted his listing on the *New York Times* Bestseller list and the *Los Angeles Times* Bestseller list to document his record of sustained commercial success. Plaintiff's novel *Meddling Kids* was number 14 on the *New York Times* Bestseller list on August 5, 2017 and was number 12 on the *Los Angeles Times* Bestseller list on August 6, 2017. Information regarding the reputation and significance of the *New York Times* Bestseller list was also submitted.

58. The listing of Plaintiff's book on the *New York Times* Bestseller list and on the *Los Angeles Times* Bestseller list, representing the 15 best selling books in the United States, was evidence of commercial success.

59. Based on the comparable evidence prong of the regulations found at 8 C.F.R. § 204.5(h)(4), Plaintiff submitted qualifying evidence to satisfy the criteria at 8 C.F.R. § 204.5(h)(3)(x).

60. Defendants did not address or even mention Plaintiff's standing on the *New York Times* Bestseller list or his standing on the *Los Angeles Times* Bestseller list, in its written decision denying the petition.

61. Defendants did not consider the evidence provided to satisfy the criteria at 8 C.F.R. § 204.5(h)(3)(x).

62. The denial found that Plaintiff did not satisfy the regulations at 8 C.F.R. § 204.5(h)(5) which state: "[T]he petition must be accompanied by clear evidence that the alien is coming to the United States to continue work in the area of expertise. Such evidence may include letter(s) from prospective employer(s), evidence of prearranged commitments such as contracts, or a statement from the beneficiary detailing plans on how he or she intends to continue his or her work in the United States."

63. The denial states, "While you submitted a statement, it lacked detailed plans which would constitute clear evidence of how your entry will substantially benefit prospectively the United States."

64. Plaintiff submitted a statement which reads, in part, "I am currently working on a fourth novel in English which will be published by the renowned American publisher Knopf Doubleday. In addition to my fourth book, I have two television shows in development in Los Angeles which are based on two of my published novels, *Meddling Kids* and *This Body's Not Big Enough for Both of Us*. Both of these shows are already affiliated with studios. For one of these shows, I have already co-written a pilot episode and have signed on to be a writer and co-producer. I intend and expect to continue my work as an Author in the United States on a full-time, ongoing basis."

65. Plaintiff also submitted a statement from his editor, Mr. Bloom, corroborating Plaintiff's plans to continue work as an author in the United States.

66. Plaintiff submitted a statement detailing plans on how he intends to continue his work as an Author in the United States to satisfy the regulations at 8 C.F.R. § 204.5(h)(5).

67. Plaintiff submitted a statement from an American employer—his editor, Mr. Bloom—to satisfy the regulations at 8 C.F.R. § 204.5(h)(5).

68. Defendants did not address Plaintiff's detailed plans to continue work as a writer in the United States on two television shows based on his novels.

69. Defendants did not mention or even address Mr. Bloom's statement.

70. Defendants did not consider the evidence submitted by Mr. Bloom.

71. With regard to the final merits determination, analyzing whether Plaintiff has a "level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the[ir] field of endeavor," 8 C.F.R. § 204.5(h)(2), and "that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise," 8 C.F.R. § 204.5(h)(3), the denial decision found that Plaintiff "has not established by a preponderance of the evidence that [he] meets at least three of the antecedent evidentiary prongs." Defendants therefore did not analyze the final merits of Plaintiff's claim.

11

72. The Plaintiff's achievements set him apart as one of a small percentage of authors who have risen to the top of his large and highly competitive field. Plaintiff is an acclaimed author, having received numerous nationally or internationally recognized prizes or awards for excellence in his field. Submitted were published articles in major media and trade publications about the Plaintiff relating to his best-selling work as an author. Plaintiff's acclaim and his best-selling novels make him a critical asset for his American publisher, Penguin Random House, one of the world's most esteemed publishing houses. His salary is among the highest in the country in his field, and he has a record of sustained commercial success, having been listed on both the *New York Times* Bestseller List and the *Los Angeles Times* Bestseller List.  Plaintiff's acclaimed work has benefit American companies, including Penguin Random House and its imprint Doubleday, and his novels are the basis of two television shows which are being produced in Los Angeles. Plaintiff intends to serve as writer and co-producer on one of these shows.

73. David Cantero Gongora, known as Edgar Cantero, is a uniquely talented and successful author, and he has all the indicia of an individual of extraordinary ability whose work will substantially benefit the United States.

## CLAIM FOR RELIEF
### Agency Action That Is Arbitrary, Capricious, An Abuse of Discretion or Not In Accordance With Law

74. The APA 5 U.S.C. § 706(2)(A), provides the Court with the authority to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

75. Plaintiff met his burden of proving, by the preponderance of the evidence, that he met at least 3 of the 10 criteria found at 8 C.F.R. § 204.5(h).

76. Plaintiff was prejudiced and adversely affected and aggrieved by the USCIS determination that he lacked the prerequisite evidentiary showing because he is one of a small percentage of authors who have risen to the very top of the field, and because he has

received sustained national or international acclaim for achievements which have been recognized in his field and Defendants' failure to consider his final merits determination under 8 C.F.R. § 204.5(h)(2) and (3), following Defendants' misapplication of the regulations to the evidentiary requirements deprived him of a decision in accordance with the law.

77. Defendants ignored probative evidence in the record relating to Plaintiffs' receipt of awards, for which he had provided evidence pursuant to 8 C.F.R. § 204.5(h)(3)(i). Defendants failed to recount or review relevant evidence for this criterion.

78. Defendants failed to fairly consider relevant and probative details and evidence provided in relation to Plaintiff's claim that he has performed a critical role for organizations or establishments that have a distinguished reputation to meet the criterion found at 8 C.F.R. § 204.5(h)(3)(viii), action which was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

79. Defendants' interpretation of the regulatory requirement of "published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field" to document the criteria at 8 C.F.R. § 204.5(h)(iii) as requiring that the published material "must be *primarily* about the petitioner" is arbitrary, capricious or not otherwise in accordance with law as it injects a requirement – primarily – that is not found in the regulation. The regulation requires published material "about the alien" "relating to the alien's work in the field" and does not require that the material be "*primarily* about" the alien.

80. Defendants ignored and misconstrued reviews in NPR and USATODAY and other publications about Plaintiffs novels. Defendants did not discuss or consider the two NPR reviews of Plaintiffs' work. Defendants misconstrued Plaintiffs book review in USATODAY as an advertisement. Defendants ignored all Plaintiff's other international press.

81. Plaintiff established by a preponderance of the evidence that there was published material about him in professional or major trade publications or other major media, relating to his work in the field, and Defendants unlawfully ignored, misconstrued, and improperly considered the evidence which was action that was arbitrary, capricious, an abuse of

13

discretion, or otherwise not in accordance with the law.

82. Defendants' interpretation of the regulatory requirement "that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field," to document the criteria at 8 C.F.R. § 204.5(h)(ix) as requiring the salary to be among the top 10 authors in the world as published by Forbes was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law as it injects a requirement that is not found in the regulation. The regulation requires either a high salary in relation to others in the field, or significantly high remuneration in relation to others in the field. Plaintiff's remuneration for 2018 was significantly high in relation to others.

83. The Forbes list shows James Patterson earned $86 million at the number 1 spot, while Rick Riordan and E.L. James tied for the number 10 spot with $10.5 million in earnings, and the action by Defendant to demand proof that Plaintiff earned in the $10 to $18 million range to show his remuneration was significantly high in relation to other authors in the field was arbitrary, capricious and not in accordance with the law.

84. Plaintiff established by a preponderance of the evidence that he has commanded significantly high remuneration in relation to others in the field through his receipt of remuneration which was nearly a quarter of a million dollars, and which was higher than or equal to the top decile of authors based on surveys submitted.

85. Plaintiff included evidence of Plaintiff's commercial success to document the criteria at 8 C.F.R. § 204.5(h)(3)(x). Because Plaintiff is not in the field of performing arts and the standards found at 8 C.F.R. § 204.5(h)(3)(x) do not readily apply to the field in which Plaintiff seeks classification, Plaintiff requested consideration of commercial success under the comparable evidence prong of the regulations as allowed under 8 C.F.R. § 204.5(h)(4).

86. Defendants failed entirely to consider any of the evidence of commercial success submitted by Plaintiff, ignoring probative evidence in the record including contracts with renowned publisher Penguin Random House, and published lists *New York Times Bestsellers* and *Los Angeles Times Bestsellers* evidencing Plaintiff's commercial success. This action was

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

87.	Plaintiff submitted a statement detailing plans on how he intends to continue his work as an Author in the United States, as well as a letter from his editor at Penguin Random House with extensive details on his plans, to satisfy the regulations at 8 C.F.R. § 204.5(h)(5), but Defendants mischaracterized this evidence, stating that it lacked detailed plans which would constitute clear evidence of how Plaintiff's entry will substantially benefit prospectively the United States, which was arbitrary, capricious, an abuse of discretion or not in accordance with law.

88.	Defendants' decision denying the petition was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law pursuant to 5 U.S.C. § 706(2)(A).

89.	Defendant disregarded probative evidence submitted by Plaintiff in the record, failing to acknowledge or discuss the evidence, which was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Assume jurisdiction over this action;
2. Declare that Plaintiff has met his burden of proving by the preponderance of the evidence that he submitted evidence of at least 3 of the 10 required criteria of 8 C.F.R. § 204.5(h)(i) – (ix);
3. Declare that Plaintiff has established by the preponderance of the evidence that he is one of a small percentage of authors who have risen to the very top of the field, and has received sustained national or international acclaim for achievements which have been recognized in the field, in accordance with 8 C.F.R. § 204.5(h)(2) and (3);
4. Declare that Defendants' decision denying the petition requesting classification as an alien of extraordinary ability was arbitrary, capricious, an abuse of discretion,

15

      or otherwise not in accordance with the law pursuant to 5 U.S.C. § 706(2)(A);

5.     Order Defendants to vacate the denial of the I-140 immigrant petition and enter a decision approving the classification;

6.     Award plaintiff reasonable costs and attorney's fees under the Equal Access to Justice Act; and

7.     Award such further relief as the Court deems necessary or proper.

Respectfully submitted,

October 31, 2019

BRENT W. RENISON
Attorney for Plaintiff

/s/ Brent W. Renison
BRENT W. RENISON [Bar No. OSB964752]
Parrilli Renison LLC
610 SW Broadway Suite 505
Portland, OR 97205
Phone: (503) 597-7190
Email: brent@entrylaw.com